STATE OF NORTH CAROLINA v. TERRAINE SANCHEZ BYERS, DEFENDANT

No. COA04-1035

(Filed 3 January 2006)

**1. Evidence— hearsay—not truth of matter asserted**

The trial court did not err in a first-degree burglary and first-degree murder case by allowing into evidence a witness's testimony even though defendant contends it was in violation of *Crawford v. Washington*, 541 U.S. 36 (2004), because: (1) if the statement is offered for reasons other than the truth of the matter asserted, the statement is not hearsay and is not covered by *Crawford*; and (2) the statements were not admitted for the truth of the matter asserted, but for purposes of explaining why the witness chose to run (in fear for his life), why he sought law enforcement assistance before returning to the apartment, and why he chose not to confront defendant single-handedly.

**2. Criminal Law— objection to evidence—similar evidence admitted without objection—waiver of objection**

A defendant on trial for murder lost the benefit of objections to testimony by an officer about a previous assault by defendant on the victim, the admission of a criminal complaint form signed by the victim regarding the assault, and testimony by the victim's great-grandmother that the victim was afraid of defendant when a second officer gave similar testimony without objection concerning the previous assault, the victim's fear of defendant, and the victim's statements in the criminal complaint form.

**3. Criminal Law— prior crimes or bad acts—objections— similar evidence admitted without objection—waiver of objection**

The trial court did not err in a first-degree burglary and first-degree murder case by allowing evidence of defendant's prior conviction concerning an attack against the victim and an unrelated assault on the victim's aunt, because: (1) defendant loses

the benefit of an objection if the same or similar evidence is admitted without objection; and (2) an officer was allowed to testify without objection that the victim had previously prosecuted defendant for assault and that the aunt reported defendant threatened to kill her while holding a knife.

4. **Constitutional Law— right to unanimous verdict—first-degree murder instruction**

The trial court did not fail to instruct the jury in a manner to ensure a unanimous verdict where defendant contends the jury could have split on the issues of premeditation and deliberation and the felony murder rule and rendered a verdict of guilty of first-degree murder on a combination of the two theories, because: (1) based on the trial court's instruction before the jury's deliberation, the jury was aware its verdict had to be unanimous; (2) the verdict sheets explicitly called for a unanimous verdict on whether defendant was guilty of first-degree murder, and the jury was required to show which theory or theories it was using to convict defendant of first-degree murder; and (3) to ensure the jury was unanimous, jurors were polled.

5. **Burglary and Unlawful Breaking or Entering; Homicide— short-form indictment—first-degree murder—first-degree burglary**

The trial court did not err in a first-degree burglary and first-degree murder case by concluding the short-form indictments for both of these charges are constitutional, because: (1) both indictments complied with the statutory and case law requirements for charging these crimes; and (2) the holdings enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), and *State v. Allen*, 359 N.C. 425 (2005), do not apply to the use of a short-form indictment for murder.

6. **Burglary and Unlawful Breaking or Entering— first-degree burglary—merger of underlying felony for first-degree murder under felony murder rule**

The trial court did not err by failing to arrest judgment on the first-degree burglary conviction on the ground the conviction was used as the underlying felony for the first-degree murder conviction under the felony murder rule, because: (1) the underlying felony constitutes an element of first-degree murder and merges into the murder conviction when defendant is convicted of felony murder only; and (2) defendant was found guilty

under both the theories of malice, premeditation, and deliberation, and felony murder.

**7. Constitutional Law— effective assistance of counsel— motion for appropriate relief—no reasonable probability of different result**

Defendant's motion for appropriate relief (MAR) stating that he received ineffective assistance of counsel (IAC) based on his trial counsel's failure to present potentially exculpatory evidence and the fact that his counsel failed to raise an IAC claim on appeal or file a MAR on defendant's behalf is denied, because: (1) there was no reasonable probability that there would have been a different result in the proceeding; (2) appellate counsel's decision to not fully argue an IAC claim concerning defendant's trial counsel was warranted; and (3) as defendant's appellate counsel was not appointed to assist defendant with his MAR, it was appropriate for appellate counsel to deny defendant's request for assistance in drafting his MAR.

Appeal by defendant from judgments dated 3 March 2004 by Judge Albert Diaz in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 April 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General David Roy Blackwell, for the State.*

*M. Alexander Charns for defendant.*

BRYANT, Judge.

Terraine Sanchez Byers (defendant) appeals from judgments dated 3 March 2004, entered consistent with jury verdicts finding him guilty of first-degree burglary and first-degree murder based upon premeditation and deliberation and felony murder.

Defendant was indicted for first-degree murder, first-degree burglary and injury to real property. Prior to trial, the prosecutor dismissed the injury to real property charge. These matters came for jury trial during the 23 February 2004 criminal session of Mecklenburg County Superior Court with the Honorable Albert Diaz presiding. Defendant was found guilty of first-degree murder and first-degree burglary on 3 March 2004. Defendant was sentenced to life imprisonment without parole on the first-degree murder charge, and 77 to 102 months imprisonment on the first-degree burglary charge. Defendant gave timely notice of appeal.

*Facts*

The State's evidence tended to show the following: On 22 November 2001, Reginald Williams visited Shanvell Burke (the victim) at her home located at 609 North Davidson Street, Charlotte, North Carolina. He arrived at 7:30 p.m., the two settled in, and watched a movie. Shortly after 9:00 p.m., they heard a crash at the back door. Burke went to the back door and started yelling "Terraine, stop." Williams, in fear for his life, ran out the front door to the bus terminal down North Davidson Street. There, he located a bus driver who called 911 for him.

Later, in explaining why he ran, Williams said Burke previously had allowed him to listen to telephone messages left for her by defendant, her ex-boyfriend. In one message, defendant stated he thought Burke was messing with somebody "and when he found out who it was, he was gonna kill them." Burke expressed to Williams her fear of defendant. "[S]he was afraid he was going to do something to hurt her bad."

Tonya Gregory lived next to the victim. In the summer of 2001, the victim had introduced defendant to Gregory as her boyfriend. Returning home on 22 November 2001 around 8:00 p.m., Gregory observed defendant on the sidewalk near the back door area of the victim's apartment. Later that evening, Gregory heard "bamming noises" coming from the victim's kitchen.

On 22 November 2001, shortly after 9:00 p.m., Charlotte-Mecklenburg Police Officer Michael King and another officer were dispatched on a 911 hang up call to Burke's apartment. Walking through the apartment breezeway to the back, Officer King observed a nervous and profusely sweating man (later identified as defendant) coming out of an apartment through a broken window in a door. Officer King and the other officer asked for identification and inquired if defendant lived in the apartment. Defendant did not produce identification and responded "no" when asked if he lived in the apartment he exited.

Defendant stated that a female lay inside the apartment, and she was hurt. While speaking, he turned, re-entered the apartment through the broken glass door and ran toward the front door. Officer King ordered defendant to stop and then requested backup. A foot pursuit ensued resulting in the apprehension of defendant in the parking lot. Defendant had a deep laceration on his left hand. Upon entering the apartment, Officer King and other officers observed a

knife handle with a broken blade. Burke was found in a pool of blood on the kitchen floor.

Officer Jason Joel Kerl also responded to the scene. Upon entering the apartment, he recognized Burke. Eleven days prior to her death, Officer Kerl responded to a domestic call at the Burke's apartment. Appearing "nervous and frightful that she was going to get hurt," Burke related that her boyfriend had been locked up for domestic violence, been released from jail, and returned to bother her. Five days later, Officer Kerl responded to another call at Burke's residence and, again, she appeared upset and was worried defendant was going to assault her.

On 30 August 2001 at 10:30 p.m., Charlotte-Mecklenburg Police Officer Matthew Presley Montgomery responded to an emergency call at 1923 Wilmore Drive. There, he met Burke and her aunt. As Officer Montgomery related: "[Burke] was extremely upset, she was shaking, she was almost crying since we were out in the street. I remember neither one of them could stand still; they were very excited." The two women screamed at defendant, who ran away as the police car approached. Burke related that defendant had threatened to kill her. He had become angry because she did not want to go home with him. She also told Officer Montgomery defendant had hit her with his fist and open hand about her head and face and on her back, pushed her down and stated he was going to kill her. Burke's aunt related that defendant pulled a knife on her and also threatened to kill her.

Officer Mark Santaniello testified concerning a domestic violence and assault call on 28 May 2001, involving defendant and Burke. In addition, Officer Donna Browning related her response to a call from Burke on 19 September 2000. Burke complained to Officer Browning that defendant threw bricks at her window and that she feared him.

Dr. James Michael Sullivan performed the autopsy on the victim's body. He found eleven stab wounds, the most serious to the left chest in the left breast area that penetrated through the chest wall and into the heart, causing hemorrhage into the cavity that surrounds the heart and into the left pleural cavity. This resulted in a large amount of blood loss.

Another significant stab wound entered the right chest, six inches into the chest cavity, injuring the right lung. This wound produced small to moderate amounts of bleeding in the right chest cavity. Dr.

Sullivan also found eighteen puncture wounds and some twenty-three cutting wounds. Wounds on the victim's hands appeared consistent with defensive wounds. The cause of death was multiple sharp trauma injuries with death resulting from blood loss.

John Donahue, the DNA technical leader for the Charlotte-Mecklenburg Police Department Crime Laboratory, analyzed fingernail scrapings from defendant's hands; a blood stain from a couch cushion; a swab from a knife; a swab from a knife blade; and blood stains from various places in the apartment, including the upper handrail of the stairway. The fingernail scrapings from defendant's right hand contained a mixture of DNA from the victim and defendant, with the majority contributed by defendant. The left fingernail scrapings taken from defendant revealed the victim contributed the majority of the DNA in the sample. The DNA in the blood stain on the upper handrail and the couch matched defendant's. The DNA in the blood stains from the knife and the knife blade matched the victim.

Defendant did not present evidence.

---

The issues on appeal are whether: (I) the trial court erred by allowing into evidence the testimony of Reginald Williams in violation of *Crawford v. Washington*; (II) the trial court erred by allowing into evidence hearsay testimony of the victim; (III) the trial court erred by allowing evidence of a prior conviction and unrelated assault on the victim's aunt; (IV) the trial court erred by failing to instruct the jury in a manner to ensure a unanimous verdict; (V) the short-form murder indictments for murder and first-degree burglary are unconstitutional in light of *Blakely v. Washington*; and (VI) the trial court erred by not arresting judgment on the first-degree burglary conviction.

*I*

[1] First, defendant argues the trial court committed error by allowing into evidence Reginald Williams' testimony and Williams' statements to law enforcement concerning statements the victim made to Williams, in violation of *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). In the alternative, defendant argues plain error if the issue was not properly preserved at trial and/or ineffective assistance of counsel.[1]

---

1. Defendant presents as an issue, whether defendant received ineffective assistance of counsel (IAC) for failure to object at trial to the admission of this evidence (although defense counsel did present a motion in limine to suppress which was denied). We also note defendant raises an IAC claim as to the admission of a criminal

Hearsay, which is generally inadmissible, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003); *State v. Canady*, 355 N.C. 242, 248, 559 S.E.2d 762, 765 (2002) ("[A] statement is not hearsay if it is offered for a purpose other than to prove the truth of the matter asserted."). If the statement is offered for reasons other than the truth of the matter asserted, the statement is not hearsay and is not covered under *Crawford*. *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."). *Crawford* holds that,

> [w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." . . . To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

*Crawford*, 542 U.S. at 61, 158 L. Ed. 2d at 199.

Defendant argues Williams' testimony and the following statements Williams made to law enforcement concerning statements the victim told to Williams, were admitted in violation of *Crawford*:

### Williams' Testimony

Q: Mr. Williams, in reference to your testimony of a moment ago that you were in fear for your life, was there a time when Shanvell allowed you to listen to some telephone messages that had been left on her telephone?

A: Yes.

Q: And did she tell you who had left those telephone messages?

A: Yes.

[DEFENSE COUNSEL]: Objection.

---

complaint signed by the victim regarding a prior domestic dispute involving the victim and defendant. See Issue *II, infra*. In his brief, however, defendant concedes that he "cannot, on direct appeal, from the naked record prove there was not some strategic reason for not objecting to these references; therefore, this error is assigned for preservation purposes only." Accordingly, this issue will not be addressed.

**STATE v. BYERS**

[175 N.C. App. 280 (2006)]

THE COURT: Basis?

[DEFENSE COUNSEL]: Hearsay.

THE COURT: Overruled.

Q: Who did she tell you had left those telephone messages?

A: She said it was Terraine, her exboyfriend.

Q: And was there one of those messages that you listened to in particular that provided you in part with your basis for fearing for your life?

A: Yes.

Q: And what was the message that you heard on the telephone that Shanvell told you it was from Terraine and you listened to it?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

A: The fact that he thought she was messing with somebody, somebody was putting some stuff in her head, and when he found out who it was, he was gonna kill them.

Q: State whether or not Shanvell had ever expressed to you, yourself, that she herself feared Terraine?

A: Yes.

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

. . .

A: She was just afraid of him. She was afraid he was going to do something to hurt her bad.

### Williams' Statement to Law Enforcement[2]

A: She was just telling me, you know, why she broke up with him because he was very possessive and that he was locked up for bothering her, and she was just feeling kind of at ease while he

---

2. Williams made these statements during an interview with Detective David Phillips of the Charlotte-Mecklenburg Police Department. At trial, the jury listened to an audiotape recording of the interview and was given a transcript of the interview.

was locked up and she was scared of him. She was scared he was gonna do something to her.

. . .

She just said one time he was fighting her and he was slapping her around.

. . .

Yeah, he [sic] said that he [sic]—she—said that he fought her a lot, but nobody knew about it

. . .

She said he was calling sometimes twenty times a day.

. . .

[T]he time up at the Bojangles she told me about when he popped up on her. . . . [S]he said he was beating on her car and some stuff like that.

Q: [W]hen he would call over there when you were there on the phone [sic] were they arguing?

A: Once. He called a lot from jail. When the first time he was in jail and he was calling and she talked to him that she wanted him to go on with his life and stuff, and that was pretty much it.

. . .

Q : [Y]ou said he was in jail. Had she ever mentioned to you about him being in jail?

A: Yes. . . . That was for beating her that time.

Q: Did she ever mention to you anything else about anything he had ever been involved in?

A: Dog fights, and then she—I don't want to make accusations, but she said something about drugs. I don't know.

. . .

She just was telling me how he used to beat her all the time, you know.

Q: Did she tell you when he might have actually gotten out of jail?

A: [S]he told me that they were trying to get him out on bail or whatever. . . And then she told me the day that he got out because he popped up at her house.

Q: . . . Do you remember when it was that he went to jail for . . . assaulting her?

A: —didn't know when he went to jail.

Q: Okay. So it was several months ago?

A: Yes.

These statements were admissible, not for the truth of the matter asserted, but for purposes of explaining why Williams chose to run (in fear for his life), seek law enforcement assistance before returning to the apartment, and chose not to confront defendant single-handedly. *See Canady,* .355 N.C. at 248, 559 S.E.2d at 765 ("A statement which explains a person's subsequent conduct is an example of such admissible nonhearsay."); *State v. Anthony,* 354 N.C. 372, 404, 555 S.E.2d 557, 579 (2001); *State v. Golphin,* 352 N.C. 364, 440, 533 S.E.2d 168, 219 (2000). Accordingly, the trial court did not err in admitting this evidence. This assignment of error is overruled.

## II

[2] Next, defendant argues the trial court erred by allowing into evidence, the hearsay statements of the victim in violation of *Crawford v. Washington.*

In *State v. Pate,* 62 N.C. App. 137, 139, 302 S.E.2d 286, 288 (1983), this Court affirmatively stated defendant waives the benefit of an objection when the same or similar evidence is admitted without objection. *See also, State v. Whitley,* 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.").

Defendant argues the admission of the following constituted error: (I) a criminal complaint signed by the victim regarding a domestic dispute occurring on 30 August 2001, involving the victim and defendant; (II) testimony of Officer Montgomery, who responded to the domestic call on 30 August 2001; (III) testimony of Officer Santaniello, who testified that defendant assaulted the victim on 30 August 2001, hit her in the back of the neck, pushed her in the back,

choked her, and threatened to kill her; and (IV) testimony of the victim's great-grandmother that the victim was afraid of defendant.

Officer Montgomery testified without objection that on 30 August 2001, the victim was extremely upset, shaking, and almost crying. The victim expressed her fear of defendant and he threatened to kill her. Defendant was angry because the victim would not go home with him and assaulted her by hitting her with his fist on her head, face, and back, then pushing her down. Officer Montgomery then drove the victim and the aunt to the Magistrate's office to file criminal complaints.

As Officer Montgomery was allowed to testify to the aforementioned without objection from defendant, defendant lost the benefit of any objection he may have made in relation to similar testimony from Officer Santaniello and the victim's aunt. Also, since Officer Montgomery's testimony essentially mimicked the statements the victim made in her criminal complaint form, defendant lost the benefit of any objection made to admission of the form.[3] This assignment of error is overruled.

*III*

[3] Defendant next argues the trial court erred by allowing into evidence a prior conviction concerning an attack against the victim and a criminal complaint form regarding an assault against the victim's aunt.

As stated *supra* Issue II, a defendant loses the benefit of an objection if the same or similar evidence is admitted without objection. *See Whitley*, 311 N.C. at 661, 319 S.E.2d at 588. Defendant argues the trial court erred in allowing into evidence Williams' testimony concerning defendant's prior conviction for assaulting the victim, and the aunt's criminal complaint concerning an attack occurring on 30 August 2001, where defendant attacked the aunt with a knife and threatened to kill her. However, Officer Montgomery was allowed to testify without objection that the victim had previously prosecuted defendant for assault, and on 30 August 2001, the aunt reported defendant threatened to kill her while holding a knife. Officer Montgomery's testimony regarding the attack on the aunt essentially mimicked the statements the aunt made on her criminal complaint form.

---

3. We note defendant did assign, in his Assignment of Error Number 5, as plain. error the admission of the victim's criminal complaint form. For the reasons stated herein, defendant has lost the benefit of any objection to admission of the criminal complaint form. Moreover, defendant has failed to show a different outcome would have resulted had the criminal complaint form not been admitted. *See State v. Parker*,

Defendant has lost the benefit of any objection to admission into evidence of the Williams' testimony regarding defendant's prior conviction and the admission of the aunt's criminal complaint form. This assignment of error is overruled.

*IV*

**[4]** Defendant next argues the trial court erred by failing to instruct the jury in a manner to ensure a unanimous verdict, contending that the jury could have split on the issues of premeditation and deliberation, and the felony murder rule and rendered a verdict of guilty of first-degree murder on a combination of the two theories.

Preliminarily, we note that the trial court instructed the jury on unanimity as follows:

Now, Ladies and Gentlemen, I instruct you that a verdict is not a verdict until all 12 jurors agree unanimously as to what your decision shall be. You may not render a verdict by majority vote. . . .

When you have reached a unanimous verdict, have your foreperson mark the appropriate place on the verdict form which I will send in to you in a few moments after you enter the jury room.

Thus, before deliberating, the jury was aware their verdict had to be unanimous.

In addition to this instruction, the verdict sheets explicitly called for a unanimous verdict on whether defendant was guilty of first-degree murder. If the jury answered this question affirmatively, it had to show whether it was convicting on one or both of the theories of first-degree murder: the theory of premeditation and deliberation, or the felony murder rule. Here, the jury unanimously decided that defendant was guilty under both theories and marked "yes" under each one.

Finally, to ensure that the jury was unanimous, jurors were polled. The clerk asked the jury:

THE CLERK: Members of the Jury, would you please stand? Members of the Jury, your foreperson has reported that you find the defendant, Terraine Byers, guilty of first-degree murder on the basis of malice, premeditation and deliberation, and under the

350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) ("[Plain error] is error so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." (quotations omitted)).

first-degree felony murder rule, and also guilty of first-degree burglary.

Was this your verdict?

(Affirmative response from all jurors.)

. . .

[DEFENSE COUNSEL]: Request polling of the jury, Your Honor.

The clerk then asked each juror individually whether or not their verdict was that defendant was guilty of first-degree murder under the basis of malice, premeditation and deliberation, and under the first-degree felony murder rule. Each juror responded, "Yes."

Our Supreme Court dealt with precisely this issue in *State v. Carroll*, holding:

> The jury's unanimous verdict based on both theories of first-degree murder was clearly represented on the verdict sheet. Moreover, following the clerk's announcement that the jury unanimously found defendant "guilty of first degree murder on the basis of malice, premeditation and deliberation and under the first degree felony murder rule," each juror individually affirmed that this was indeed his verdict. It would strain reason to conclude that the jury's verdict was not unanimously based on both theories of first-degree murder. Accordingly, the trial court properly polled the jury to ensure that the announced verdict was unanimous. . . . Nothing more was required.

*State v. Carroll*, 356 N.C. 526, 545, 573 S.E.2d 899, 911-12 (2002). This assignment of error is overruled.

## V

**[5]** Defendant argues use of the short-form indictments for first-degree murder and first-degree burglary were constitutionally defective after *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). Defendant argues that under *Blakely*, every fact essential to his punishment must have been charged in the indictment. Specifically, defendant "contends that the failure to specifically name the felony crime of burglary or assault inflicting serious injury in the murder indictment and in the first-degree burglary indictment is a jurisdictional defect and judgment must be arrested on the burglary charge and on the murder charge based on upon felony murder." Defendant's argument, however, is misguided.

Our Courts have consistently held that the short-form first-degree murder indictment does not violate the Sixth Amendment of the United States Constitution. *See, e.g., State v. Squires,* 357 N.C. 529, 591 S.E.2d 837 (2003), *cert. denied,* 541 U.S. 1088, 159 L. Ed. 2d 252 (2004); *State v. Braxton,* 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied,* 531 U.S. 1130, 148 L. Ed. 2d 797 (2001); *State v. Wallace,* 351 N.C. 481, 528 S.E.2d 326, *cert. denied,* 531 U.S. 1018, 148 L. Ed. 2d 498 (2000). In upholding the constitutionality of short-form indictments for first-degree murder, our Supreme Court has held that:

> [the United States Supreme] Court's refusal to incorporate the grand jury indictment requirement into the Fourteenth Amendment along with the lack of precedent on this issue convinces us that the Fourteenth Amendment does not require the listing in an indictment of all the elements or facts which might increase the maximum punishment for a crime.

*Wallace,* at 508, 528 S.E.2d 326, 343; *see also, Squires,* 357 N.C. at 537, 591 S.E.2d at 842 ("The United States Supreme Court has consistently declined to impose a requirement mandating states to prosecute only upon indictments which include all elements of an offense."); *State v. Hunt,* 357 N.C. 257, 273, 582 S.E.2d 593, 604 ("[T]he United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states."), *cert. denied,* 539 U.S. 985, 156 L. Ed. 2d 702 (2003).

Similarly, our Courts have held that "[a]n indictment for burglary need not specify the particular felony that the accused intended to commit at the time of the breaking or entering . . . ." *State v. Lawrence,* 352 N.C. 1, 18, 530 S.E.2d 807, 818 (2000). The indictment must charge the offense "in a plain, intelligible, and explicit manner and contain[] sufficient allegations to enable the trial court to proceed to judgment and to bar a subsequent prosecution for the same offense, . . . and . . . inform[] the defendant of the charge against him with sufficient certainty to enable him to prepare his defense." *Id.* at 18-19, 530 S.E.2d at 818 (quotations omitted); *see also,* N.C. Gen. Stat. § 15A-924(a)(5) (2003).

"In *Blakely,* the [United States Supreme] Court reaffirmed its previous holding that the right to jury trial requires jurors to find sentencing facts which increase the penalty for a crime beyond the prescribed statutory maximum." *State v. Hurt,* 359 N.C. 840, 845, 616 S.E.2d 910, 913 (2005) (quotations omitted); *see also, State v. Allen,* 359 N.C. 425, 437, 615 S.E.2d 256, 265 (2005) ("Other than the fact of

a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt."). However, in *Allen*, our Supreme Court held that, under *Blakely*, "sentencing factors which might lead to a sentencing enhancement" need not be alleged in a North Carolina state court indictment. *Id.* at 438, 615 S.E.2d at 265. Furthermore, "to this date, the United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states." *State v. Hunt*, 357 N.C. 257, 273, 582 S.E.2d 593, 604, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003). "[T]he Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment." *Id.* at 272, 582 S.E.2d at 603.

In the instant case, the indictments for first-degree murder and first-degree burglary complied with the statutory and case-law requirements for charging first-degree murder and first-degree burglary. The holdings enunciated in *Blakely* and *Allen* do not apply to the use of a short-form indictment for murder in the instant case. *See, State v. Wissink*, 172 N.C. App. 829, 836-37, 617 S.E.2d 319, 324 (2005) (fact that defendant committed an offense while on probation need not have been alleged in the indictment). This assignment of error is overruled.

## VI

[6] Lastly, defendant argues the trial court erred by not arresting judgment on the first-degree burglary conviction on the ground the conviction was used as the underlying felony for the first-degree murder conviction under the felony murder theory.

"When a defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction." *State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 770 (2002). However, here, defendant was found guilty under both the theories of malice, premeditation and deliberation, and felony murder. Accordingly, we hold the trial court did not err in not arresting judgment on the first-degree burglary conviction, as defendant was found guilty of first-degree murder on the basis of malice, premeditation and deliberation. This assignment of error is overruled.

### Motion for Appropriate Relief

[7] Defendant has filed a *pro se* Motion for Appropriate Relief (MAR) with this Court, which we decide pursuant to N.C. Gen. Stat.

§ 15A-1418. From defendant's pro se motion, we can identify three issues raised by defendant: (1) whether the trial court improperly admitted evidence; (2) whether the trial court had jurisdiction over defendant's charges; and (3) whether defendant's trial and/or appellate counsel were ineffective. We have addressed defendant's first two MAR issues above, see Issue *I & II, supra*, and find no error. As to defendant's claims of ineffective assistance of counsel (IAC), we find the record before us is sufficient to make a determination of the questions presented and it is not necessary to remand the case for proceedings on the motion.

As best we can determine from defendant's MAR, defendant argues he received ineffective assistance from both his trial and his appellate counsel. Defendant argues his trial counsel did not have blood samples "left around the frame of the [broken] window in the victim's residence" tested for DNA evidence and did not "determine if there [were] latent [finger]prints . . . inside or outside of the window glass." Defendant contends his trial counsel's failure to present potentially exculpatory evidence amounts to ineffective assistance of counsel.

To prevail on his IAC claim defendant must show that his counsel's conduct fell below an objective standard of reasonableness. *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984)). Defendant must satisfy the following two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Braswell* at 562, 324 S.E.2d at 248 (quotations omitted). "[E]ven an unreasonable error . . . does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Id.* at 563, 324 S.E.2d at 248.

As defendant admits he cut his fingers on the glass of the broken window, any testing of the blood samples from the broken glass

GOOD HOPE HEALTH SYS., L.L.C. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[175 N.C. App. 296 (2006)]

would identify defendant's DNA. While it is possible for DNA of other individuals to be present, in light of the evidence presented at trial any such finding is not sufficient to establish a reasonable probability that there would have been a different result in the proceedings. Therefore, defendant's IAC claim as to his trial counsel is denied.

Defendant also argues he has received ineffective assistance from his appellate counsel in that his appellate counsel has not, on appeal, raised an IAC issue concerning defendant's trial counsel, has not raised issues concerning inadmissible evidence, and has not filed a Motion of Appropriate Relief on defendant's behalf. Defendant's appellate counsel was appointed to perfect defendant's appeal by the North Carolina Office of the Appellate Defender. Defendant's appellate counsel has brought forth arguments regarding alleged inadmissible evidence, see Issue *I & II, supra*. For the reasons stated above, appellate counsel's decision to not fully argue an IAC claim concerning defendant's trial counsel was warranted. Further, as defendant's appellate counsel was not appointed to assist defendant with his MAR, it was appropriate for appellate counsel to deny defendant's request for assistance in drafting his MAR. Therefore, defendant's IAC claim as to his appellate counsel is denied.

No error at trial. Defendant's claims under his Motion for Appropriate Relief are denied.

Judges McGEE and STEELMAN concur.