ARROWOOD, Judge, dissenting.
 

 I respectfully dissent. I would hold the trial court did not err by denying defendant's motion for DNA testing because the allegations in his motion were not sufficient to establish that he was entitled to the appointment of counsel.
 

 "In reviewing a denial of a motion for postconviction DNA testing, findings of fact are binding on this Court if they are supported by competent evidence and may not
 be disturbed absent an abuse of discretion. The lower court's conclusions of law are reviewed
 
 de novo.
 
 "
 
 State v. Lane
 
 ,
 
 370 N.C. 508
 
 , 517,
 
 809 S.E.2d 568
 
 , 574 (2018) (citation, internal
 quotation marks, and alteration omitted). The movant "has the burden of proving by a preponderance of the evidence every fact essential to support the motion for postconviction DNA testing, which includes the facts necessary to establish materiality."
 

 Id.
 

 at 518
 
 ,
 
 809 S.E.2d at 574
 
 (internal quotation marks and citations omitted).
 

 N.C. Gen. Stat. § 15A-269 (2017) provides, in relevant part:
 

 (a) A defendant may make a motion before the trial court that entered the judgment of conviction against the defendant for performance of DNA testing ... if the biological evidence meets all of the following conditions:
 

 (1) Is material to the defendant's defense.
 

 (2) Is related to the investigation or prosecution that resulted in the judgment.
 

 (3) Meets either of the following conditions:
 

 a. It was not DNA tested previously.
 

 b. It was tested previously, but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.
 

 (b) The court shall grant the motion for DNA testing ... upon its determination that:
 

 (1) The conditions set forth in subdivisions (1), (2), and (3) of subsection (a) of this section have been met;
 

 (2) If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
 

 (3) The defendant has signed a sworn affidavit of innocence.
 

 ....
 

 (c) ... [T]he court shall appoint counsel for the person who brings a motion under this section if that person is
 indigent. If the petitioner has filed pro se, the court shall appoint counsel for the petitioner ... upon a showing that the DNA testing may be material to the petitioner's claim of wrongful conviction.
 

 N.C. Gen. Stat. § 15A-269. "Thus, to be entitled to counsel, defendant must first establish that (1) he is indigent and (2) DNA testing may be material to his wrongful conviction claim."
 
 State v. Cox
 
 ,
 
 245 N.C. App. 307
 
 , 312,
 
 781 S.E.2d 865
 
 , 868 (2016) (citation omitted). The materiality showing required under N.C. Gen. Stat. § 15A-269(c) is no less demanding than under (a)(1).
 
 State v. Gardner
 
 ,
 
 227 N.C. App. 364
 
 , 368,
 
 742 S.E.2d 352
 
 , 355 (2013). Our Supreme Court has previously determined that, in this context, "material means there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."
 
 Lane
 
 ,
 
 370 N.C. at 519
 
 ,
 
 809 S.E.2d at 575
 
 (citation and internal quotation marks omitted).
 

 Whether a "defendant's request for postconviction DNA testing is 'material' to his defense, as defined in N.C. [Gen. Stat.] § 15A-269(b)(2), is a conclusion of law" that we review
 
 de novo
 
 on appeal.
 

 Id.
 

 at 517-18
 
 ,
 
 809 S.E.2d at 574
 
 . To allege that the requested DNA would be material, a "defendant must provide
 
 specific reasons
 
 that the requested DNA test would be significantly more accurate and probative of the identity of the perpetrator or accomplice or that there is a reasonable probability of contradicting the previous test results."
 
 Cox
 
 ,
 
 245 N.C. App. at 312
 
 ,
 
 781 S.E.2d at 869
 
 (citation and internal quotation marks omitted). Our determination as to whether the request is material to a defendant's defense must be based on "the context of the entire record, and hinges upon whether the evidence would have affected the jury's deliberations."
 
 Lane
 
 ,
 
 370 N.C. at 519
 
 ,
 
 809 S.E.2d at 575
 
 (internal citation and quotation marks omitted).
 

 Here, defendant's motion alleges: (1) his theory at trial was that someone else committed the crimes; (2) the State's failure to
 test the blood on both his and the victim's clothes deprived him of a fair trial because testing the clothes would reveal the identity of this person he claims murdered the victim; and (3) the perpetrator's blood will be on the clothes because the perpetrator fought both defendant and the victim on the night of the victim's murder.
 

 In light of the context of the entire record, I disagree with the majority that these allegations were sufficient to establish materiality, and agree with the trial court that defendant "failed to show how conducting additional DNA testing is material to his defense." The insufficiency of
 these allegations is demonstrated by our Supreme Court's recent decision in
 
 Lane
 
 .
 

 In
 
 Lane
 
 , our Supreme Court considered whether a trial court improperly denied a defendant's motion for postconviction DNA testing of hair samples because defendant failed "to show that the requested postconviction DNA testing of hair samples is material to his defense[.]"
 
 Lane
 
 ,
 
 370 N.C. at 516
 
 ,
 
 809 S.E.2d at 574
 
 (internal quotation marks omitted). The court concluded that the defendant could not establish materiality because of the "overwhelming evidence of defendant's guilt presented at trial, the dearth of evidence at trial pointing to a second perpetrator, and the inability of forensic testing to determine whether the hair samples at issue are relevant to establish a third party was involved in these crimes together[.]"
 

 Id.
 

 at 520
 
 ,
 
 809 S.E.2d at 576
 
 . This evidence that the defendant in
 
 Lane
 
 raped, sodomized, and murdered the victim included a confession by defendant, which never mentioned a second perpetrator, eyewitness testimony, and forensic testing that revealed a "hair was found in [the victim's] anal canal ... could not" rule out defendant "as the source of the hair."
 

 Id.
 

 at 520-21
 
 ,
 
 809 S.E.2d at 576
 
 . The State's evidence also included forensic evidence that:
 

 the trash bag in which [the victim] was found was consistent with the size, composition, construction, texture, red drawstrings, and reinforcement characteristics of the trash bags found in defendant's home. Fibers from a blue tarp and a roll of duct tape also found at defendant's home were consistent with the tarp and duct tape found near the location where [the victim's] body was found. Fourteen hairs consistent with the victim's head hairs were found in defendant's vacuum cleaner and carpet sample, confirming [the victim] was in defendant's home, and these hairs exhibited signs of being cut, confirming [the victim] was subjected to some kind of force.
 

 Id.
 

 at 521
 
 ,
 
 809 S.E.2d at 576
 
 .
 

 Here, as described by the majority, defendant was convicted of first degree burglary and first degree murder on 3 March 2004.
 
 State v. Byers
 
 ,
 
 175 N.C. App. 280
 
 , 282,
 
 623 S.E.2d 357
 
 , 358 (2006). The State's evidence of defendant's guilt was extensive. The State's witness Reginald Williams testified that he visited the victim on the night of her murder.
 
 Id.
 
 at 283,
 
 623 S.E.2d at 359
 
 . "Shortly after 9:00 p.m., they heard a crash at the back door[,]" so the victim "went to the back door and started yelling 'Terraine, stop.' "
 

 Id.
 

 Williams feared for his life, so he ran out the front
 door and located a bus driver, who called 911 for him.
 

 Id.
 

 Williams testified that the victim feared defendant and was afraid he was going to do something to hurt her.
 

 Id.
 

 He also testified that the victim "previously had allowed him to listen to telephone messages left for her by defendant, her ex-boyfriend. In one message, defendant stated he thought [the victim] was messing with somebody 'and when he found out who it was, he was gonna kill them[,]' " which is why the witness fled.
 

 Id.
 

 Additionally, one of the victim's neighbors testified that she observed defendant near the back door of the victim's apartment around 8:00 p.m., and police observed defendant coming out of the victim's apartment through a broken window in a door when they arrived on the scene.
 

 Id.
 

 Defendant told the officers "that a female lay inside the apartment, and she was hurt. While speaking, he turned, re-entered the apartment" and attempted to flee.
 

 Id.
 

 An officer testified he had responded to a domestic call at the victim's residence twice in the eleven days prior to the murder because defendant had been released from jail after being locked up for domestic violence and had "returned to bother" the victim.
 

 Id.
 

 Additional officers testified to prior incidents of domestic violence involving defendant and the victim.
 
 Id.
 
 at 283,
 
 623 S.E.2d at 359-60
 
 .
 

 During the trial, the State presented DNA evidence analyzing
 

 fingernail scrapings from defendant's hands; a blood stain from a couch cushion; a swab from a knife; a swab from a knife blade; and blood stains from various places in the apartment, including the upper handrail of the stairway. The fingernail scrapings from defendant's right hand contained a mixture of DNA from the victim and defendant, with the majority contributed by defendant. The left fingernail scrapings taken from defendant revealed the victim contributed the majority of the DNA in the sample. The DNA in the blood stain on the upper handrail and the couch matched defendant's. The DNA in the blood stains from the knife and the knife blade matched the victim.
 

 Id.
 
 at 285,
 
 623 S.E.2d at 360
 
 . Although the blood on defendant's clothing did not undergo DNA testing, defendant stipulated at trial that it was the victim's blood on the clothing.
 

 In contrast, defendant did not present any evidence at trial.
 
 Id.
 
 at 285,
 
 623 S.E.2d at 360
 
 . Furthermore, the record before us, beyond the motion's allegations, does not support his claim that defendant
 presented a defense at trial that there was a second perpetrator, or his allegations that he made specific statements about a second perpetrator at the scene. I do note that the record contains a narrative report from reporting officer Jeff R. Shelton that upon his arrival to the crime scene he saw defendant exiting the back door of the victim's apartment and he told the officers "there was someone else inside" before he fled from the officers, however, I do not think this is enough evidence to support defendant's allegation that he has maintained there was a second perpetrator.
 

 Thus, in light of the overwhelming evidence of defendant's guilt and dearth of evidence pointing to a second perpetrator, defendant did not meet his burden to prove by a preponderance of the evidence every fact necessary to establish materiality, and the trial evidence was sufficient to dictate the trial court's ultimate conclusion on materiality, as in
 
 Lane
 
 . Accordingly, I would hold that no reasonable probability exists under the facts of this case that a jury would fail to convict defendant and that the trial court did not err by concluding defendant failed to establish materiality.
 

 Because defendant failed to meet his burden of showing materiality, I need not address whether the trial court erred by denying his motion for DNA testing prior to an inventory under N.C. Gen. Stat. § 15A-269(f) (2017).
 
 See
 

 State v. Tilghman
 
 , No. COA17-1308, --- N.C. App. ----, ----,
 
 821 S.E.2d 253
 
 , 259,
 
 2018 WL 4700630
 
 (N.C. Ct. App. Oct. 2, 2018) ("Defendant failed to meet his burden of showing materiality. Accordingly, the trial did not err by denying his motion for DNA testing prior to an inventory under N.C. Gen. Stat. § 15A-269(f).").