McGEE, Chief Judge.
 

 Terraine Sanchez Byers ("Defendant") was convicted of first-degree murder of his former girlfriend and first-degree burglary on 3 March 2004. After exhausting his direct appeal, Defendant filed a
 
 pro se
 
 motion for post-conviction DNA testing pursuant to N.C. Gen. Stat. § 15A-269 on 31 July 2017. The trial court entered an order dated 3 August 2017 denying Defendant's motion. Defendant appeals and argues that the trial court erred in denying his motion for post-conviction DNA testing. We agree.
 

 I.
 
 Factual and Procedural History
 

 Defendant was convicted of first-degree murder and first-degree burglary on 3 March 2004. Defendant was sentenced to life imprisonment
 without parole for the murder conviction and a minimum of 77 months to a maximum of 102 months of imprisonment for the burglary conviction. Defendant appealed and this Court upheld the trial court's decision in
 
 State v. Byers
 
 ,
 
 175 N.C. App. 280
 
 ,
 
 623 S.E.2d 357
 
 (2006) (
 
 "
 

 Byers I
 
 "). Our Supreme Court subsequently denied Defendant's petition for discretionary review on 6 April 2006.
 
 State v. Byers
 
 ,
 
 360 N.C. 485
 
 ,
 
 631 S.E.2d 135
 
 (2006).
 

 Defendant's convictions arose out of events that occurred on the evening of 22 November 2001 when Defendant's ex-girlfriend, Shanvell Burke ("Ms. Burke"), was stabbed to death inside her Charlotte apartment ("Ms. Burke's apartment" or "the apartment"). Officers had previously been called to Ms. Burke's apartment multiple times because of Ms. Burke's fear of Defendant.
 
 Byers I
 
 ,
 
 175 N.C. App. at 284
 
 ,
 
 623 S.E.2d at 359-60
 
 . Reginald Williams ("Mr. Williams") was inside Ms. Burke's apartment on the evening of 22 November 2001 and testified that he and Ms. Burke were watching television when they heard a crash at the back door of the apartment.
 
 Id.
 
 at 283,
 
 623 S.E.2d at 359
 
 . Mr. Williams further testified that Ms. Burke went to the back door and he heard her yelling, "Terraine, stop" before Mr. Williams fled the apartment in fear.
 

 Id.
 

 When officers arrived at the scene, they saw Defendant leaving the apartment through a broken window in a door, and described him as "nervous and profusely sweating."
 
 Id.
 
 at 283,
 
 623 S.E.2d at 359
 
 . After informing the officers that Ms. Burke was inside and injured, Defendant attempted to flee the scene.
 

 Id.
 

 Defendant was quickly apprehended and was found to have a deep laceration on his left hand.
 

 Id.
 

 The officers found Ms. Burke deceased inside the apartment. The officers also found a knife with a broken blade.
 
 Id.
 
 at 283-84,
 
 623 S.E.2d at 359
 
 .
 

 Investigators analyzed fingernail scrapings from Defendant's hands, a blood stain from a
 cushion on Ms. Burke's couch, the knife handle, the knife blade, and various other blood stains throughout the apartment.
 
 Id.
 
 at 285,
 
 623 S.E.2d at 360
 
 . The DNA from the several samples all matched either Defendant or Ms. Burke.
 

 Id.
 

 Defendant stipulated that the blood on the shirt that he was wearing at the time of his arrest was Ms. Burke's. For a more detailed description of the facts underlying Defendant's convictions, refer to this Court's prior opinion in
 
 Byers I
 

 .
 

 Defendant filed a
 
 pro se
 
 motion for post-conviction DNA testing on 31 July 2017. In his motion, Defendant asserted that he was on the other side of town waiting for a bus when the attack on Ms. Burke occurred. Defendant further alleged that one of the State's witnesses testified she saw Defendant getting on the 9:00 p.m. city bus on the night of the
 events in question. Defendant alleged that a private investigator swore in an affidavit that it would have been impossible for Defendant to arrive at Ms. Burke's apartment prior to the alleged 911 call.
 

 Defendant further stated in his motion that, when he arrived at Ms. Burke's apartment, he noticed the "back door smashed in." Defendant also asserted that he went inside the apartment to investigate and was attacked by a man wearing a plaid jacket. The two men struggled, which Defendant argues explains the presence of his DNA throughout the apartment. Defendant stated he lost his balance during the attack and fell, allowing the assailant to escape. Defendant argues that, because both he and Ms. Burke struggled with the unknown assailant, DNA testing of his and Ms. Burke's previously untested clothing would reveal the identity of the actual perpetrator. Defendant noted that the State's DNA expert reported the presence of human blood in various locations throughout Ms. Burke's apartment that did not match either Defendant or Ms. Burke; however, this information was not introduced at trial. Defendant further requested that the items of clothing be preserved and that an inventory of the evidence be prepared.
 

 The trial court entered an order dated 3 August 2017 denying Defendant's motion. The trial court held that Defendant had failed to sufficiently allege how DNA testing of the requested items would be "material to his defense." Defendant appeals.
 

 II.
 
 Analysis
 

 The issues Defendant argues are that the trial court erred in denying his motion for post-conviction DNA testing: (1) "prior to obtaining and reviewing the statutorily required inventory of evidence" collected during the criminal investigation, and (2) "before appointing counsel when [his] motion for such testing establishe[d] that ... [D]efendant [was] indigent and that the testing may be material to his defense."
 

 A.
 
 Denial of Motion Prior to Inventory of Evidence
 

 Defendant argues the trial court erred by denying his motion for postconviction DNA testing before obtaining and reviewing the statutorily required and requested inventory of physical and biological evidence collected during the criminal investigation.
 

 1. Appellate Jurisdiction
 

 Initially, the State responds by arguing Defendant "lacks the right to appeal" the denial of a motion to locate and preserve evidence under N.C. Gen. Stat. § 7A-27(b)(1) and N.C. Gen. Stat. § 15A-270.1. The State
 further argues that Defendant failed to preserve this issue for appellate review by failing to obtain a ruling on the motion as required by N.C. R. App. P 10(a)(1), that "ordinarily results in waiver of appellate review of the issue."
 
 In re B.E.
 
 ,
 
 186 N.C. App. 656
 
 , 657,
 
 652 S.E.2d 344
 
 , 345 (2007). However, the State misconstrues Defendant's argument. Defendant does not argue, as the State contends, that the trial court erred by failing to order the preservation and inventory of the requested evidence. Instead, Defendant argues the trial court erred in denying his motion for post-conviction DNA testing prior to receiving the inventory of evidence. Therefore, this case is distinguishable from the case cited by the State,
 
 State v. Doisey
 
 ,
 
 240 N.C. App. 441
 
 ,
 
 770 S.E.2d 177
 
 (2015), where this Court dismissed a defendant's argument that the trial court erred in failing to order the inventory of biological evidence.
 N.C. Gen. Stat. § 15A-270.1 (2017) explicitly states that "[t]he defendant may appeal an order denying the defendant's motion for DNA testing under this Article, including by an interlocutory appeal." Therefore, appeal was the proper avenue for reversing the trial court's order, and Defendant preserved this issue for appellate review by appealing the denial of his motion for post-conviction DNA testing. Defendant has also filed a petition for a writ of
 
 certiorari
 
 for review of this issue. However, having found that Defendant's appeal is proper under N.C.G.S. § 15A-270.1, we deny his petition as unnecessary.
 

 2. Procedure for the Inventory of Evidence
 

 In order to fully analyze Defendant's argument, we must consider the statutory procedure for requesting an inventory of evidence and the role of the inventory within the post-conviction DNA testing statute. The statutory procedure for compiling an inventory of evidence is set out in N.C. Gen. Stat. § 15A-268(a7), which requires custodial agencies:
 

 Upon written request by the defendant, the custodial agency shall prepare an inventory of biological evidence relevant to the defendant's case that is in the custodial agency's custody. If the evidence was destroyed through court order or other written directive, the custodial agency shall provide the defendant with a copy of the court order or written directive.
 

 N.C.G.S. § 15A-268(a7). N.C.G.S. § 15A-269(f) (2017) similarly requires: "Upon receipt of a motion for postconviction DNA testing, the custodial agency shall inventory the evidence pertaining to that case and provide the inventory list, as well as any documents, notes, logs, or
 reports relating to the items of physical evidence, to the prosecution, the petitioner, and the court."
 

 Defendant's argument that the trial court erred by denying his motion for postconviction DNA testing prior to obtaining an inventory of evidence was recently addressed by this Court in
 
 State v. Tilghman
 
 , --- N.C. App. ----,
 
 821 S.E.2d 253
 
 ,
 
 2018 WL 4700630
 
 (filed 2 October 2018). In
 
 Tilghman
 
 , the defendant made similar arguments under both N.C.G.S. § 15A-268(a7) and N.C.G.S. § 15A-269(f), that the trial court erred by denying his motion for post-conviction DNA testing prior to receiving an inventory of the evidence.
 
 Tilghman
 
 , --- N.C. App. at ----, 821 S.E.2d at ----. In
 
 Tilghman
 
 , this Court, addressed both statutes in turn, rejected the defendant's arguments and found no error in the trial court's denial of the defendant's motion.
 

 In addressing N.C.G.S. § 15A-268(a7),
 
 Tilghman
 
 held the trial court "did not err in denying [d]efendant's motion for postconviction DNA testing prior to obtaining an inventory of biological evidence which [d]efendant never requested, and we must dismiss this argument.... Assuming
 
 arguendo
 
 [d]efendant properly requested an inventory of biological evidence, case law would bind us to dismiss this argument."
 

 Id.
 

 at ----,
 
 821 S.E.2d at 258
 
 (internal citations omitted) (citing
 
 Doisey
 
 ,
 
 240 N.C. App. at 447-48
 
 ,
 
 770 S.E.2d at
 
 181-82 ). Unlike the defendants in both
 
 Tilghman
 
 and
 
 Doisey
 
 , Defendant in the present case clearly filed a written request for an inventory of biological evidence. While Defendant's motion was titled a "Request for Post-Conviction DNA Testing," on page fourteen of his motion, Defendant specifically states: "Defendant also request [sic] the court to order preservation, preparation of the evidence and its inventory." Defendant's motion cites to both N.C.G.S. § 15A-268(a7) and N.C.G.S. § 15A-269(f).
 

 However, in
 
 State v. Randall
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 219
 
 , 222 (2018) this Court addressed the requirements of N.C.G.S. § 15A-268(a7) and held that the written request for an inventory of evidence must be directed to the custodial agency. This Court held that, without evidence in the record that the defendant made a proper request under N.C.G.S. § 15A-268(a7), there was no ruling for this Court to consider and that defendant's appeal must be dismissed. Similarly, the record in the case before us is devoid of any evidence indicating Defendant ever made a request to a custodial agency; therefore, Defendant was not entitled to an inventory of the evidence under N.C.G.S. § 15A-268(a7).
 

 In addressing N.C.G.S. § 15A-269, this Court in
 
 Tilghman
 
 held:
 

 The statute is silent as to whether a defendant or the trial court bears the burden of serving the motion for inventory on the custodial agency.
 

 Here, the record lacks proof either Defendant or the trial court served the custodial agency with the motion for inventory. Assuming
 
 arguendo
 
 it is the trial court's burden to serve the custodial agency with the motion, any error by the court below [in denying the defendant's motion for postconviction DNA testing prior to receiving the inventory] is harmless error. As held
 
 supra
 
 , Defendant failed to meet his burden of showing materiality. Accordingly, the trial [court] did not err by denying his motion for DNA testing prior to an inventory under N.C. Gen. Stat. § 15A-269(f).
 

 Tilghman,
 
 --- N.C. App. at ----,
 
 821 S.E.2d at 259
 
 . As discussed below, Defendant in the present case, unlike in
 
 Tilghman
 
 , met his burden of showing materiality.
 

 3. Timing of Trial Court's Determination
 

 Defendant contends that a trial court is required to receive the inventory prior to making its determination under N.C.G.S § 15A-269. We disagree. In
 
 Doisey
 
 , this Court stated:
 

 The stated policy behind [our State's DNA Database and Databank Act of 1993] is to assist federal, State, and local criminal justice and law enforcement agencies in the identification, detection, or exclusion of individuals who are subjects of the investigation or prosecution of felonies or violent crimes against the person[.] Thus, in applying the Act in any particular case, we must strive to harmonize its provisions while being mindful of this legislative intent and seeking to avoid nonsensical interpretations. Both the plain language of section 15A-269 as quoted
 
 supra
 
 , and the express intent of the Act as stated in section 15A-266.1, make absolutely clear that its ultimate focus is to help solve crimes through DNA
 
 testing
 
 . All provisions of the Act must be understood as facilitating that ultimate goal.
 

 Doisey
 
 ,
 
 240 N.C. App. at 445
 
 ,
 
 770 S.E.2d at 180
 
 (internal quotation marks and citations omitted). We further noted that "the required inventory under section 15A-269 is merely an ancillary procedure to an underlying request for DNA testing."
 
 Id.
 
 at 446,
 
 770 S.E.2d at 181
 
 .
 

 N.C.G.S. § 15A-269(f) provides that: "[u]pon receipt of a motion for postconviction DNA testing, the custodial agency
 
 shall
 
 inventory the evidence...." This language indicates that a custodial agency's duty to prepare an inventory is conditioned on the receipt of a motion for post-conviction DNA testing, unlike N.C.G.S. § 15-268(a7), where the duty to act is predicated on the receipt of a "written request by the defendant." "Thus, a defendant who requests DNA testing under section 15A-269 need not make any additional written request for an inventory of biological evidence."
 
 Doisey
 
 ,
 
 240 N.C. App. at 445
 
 ,
 
 770 S.E.2d at 180
 
 .
 

 Under the language of N.C.G.S. § 15A-269, the trial court's duty is not similarly conditioned on the receipt of an inventory from a custodial agency. Instead, N.C.G.S. § 15A-269(b) states:
 

 The court shall grant the motion for DNA testing ... upon its determination that:
 

 (1) The conditions set forth in subdivisions (1), (2), and (3) of subsection (a) of this section have been met;
 

 (2) If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
 

 (3) The defendant has signed a sworn affidavit of innocence.
 

 N.C.G.S. § 15A-269(b) clearly lays out three conditions the trial court must determine exist prior to granting a motion for post-conviction DNA testing. Obtaining and reviewing the results of an inventory prepared by a custodial agency is not one of the conditions. This reading of N.C.G.S. § 15A-269(b) is consistent with the overall purpose of the statute to "assist federal, State, and local criminal justice and law enforcement agencies in the identification, detection, or exclusion of individuals who are subjects of
 the investigation or prosecution of felonies or violent crimes against the person[.]"
 
 Doisey
 
 ,
 
 240 N.C. App. at 445
 
 ,
 
 770 S.E.2d at 180
 
 .
 

 Defendant argues that, "[w]ithout obtaining and reviewing the required inventories, the trial court lacked any knowledge about the nature or status of the evidence in [Defendant's] case[.]" Under N.C.G.S. § 15A-269(a), "[t]he defendant has the burden ... of establishing
 the facts essential to his claim by a preponderance of the evidence."
 
 State v. Cox
 
 ,
 
 245 N.C. App. 307
 
 , 310,
 
 781 S.E.2d 865
 
 , 867 (2016). The trial court's ability to analyze whether the conditions in N.C.G.S. § 15A-269(b) were met is not contingent on the results of an inventory of the evidence. Whether the requested evidence is still in the possession of the custodial agency is immaterial to the trial court's determination under N.C.G.S. § 15A-269(b). Instead, the trial court is required to make its determination as to whether Defendant has sufficiently alleged the conditions set forth in N.C.G.S. § 15A-269(b) that the DNA testing sought is: (1) material to Defendant's defense, (2) related to the prior investigation or prosecution, (3) has not been tested previously or would result in more accurate results, (4) likely to produce a more favorable result for Defendant, and (5) Defendant has signed an affidavit of innocence.
 
 See
 
 N.C.G.S. § 15A-269(b). Therefore, the trial court did not err in denying Defendant's motion for post-conviction DNA testing prior to obtaining and reviewing the inventory.
 

 B.
 
 Appointment of Counsel
 

 Defendant argues the trial court erred in denying his motion for postconviction DNA testing because the allegations in his motion were sufficient to establish that he was entitled to the appointment of counsel. We agree. N.C. Gen. Stat. § 15A-269 (2017) sets out the standards for evaluating motions for postconviction DNA testing and for the appointment of counsel. Under N.C.G.S. § 15A-269,
 

 (a) A defendant may make a motion before the trial court that entered the judgment of conviction against the defendant for performance of DNA testing ... if the biological evidence meets all of the following conditions:
 

 (1) Is material to the defendant's defense.
 

 (2) Is related to the investigation or prosecution that resulted in the judgment.
 

 (3) Meets either of the following conditions:
 

 a. It was not DNA tested previously.
 

 b. It was tested previously, but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.
 

 ....
 

 (c) ... [T]he court shall appoint counsel for the person who brings a motion under this section if that person is indigent. If the petitioner has filed pro se, the court shall appoint counsel for the petitioner ... upon a showing that the DNA testing may be material to the petitioner's claim of wrongful conviction.
 

 N.C.G.S. § 15-269. "Thus, to be entitled to counsel, defendant must first establish that (1) he is indigent and (2) DNA testing may be material to his wrongful conviction claim."
 
 Cox
 
 ,
 
 245 N.C. App. at 312
 
 ,
 
 781 S.E.2d at 868
 
 .
 

 In
 
 State v. Gardner
 
 ,
 
 227 N.C. App. 364
 
 ,
 
 742 S.E.2d 352
 
 (2013), this Court held that the materiality showing required to be entitled to the appointment of counsel under subsection (c) is no less demanding than under subsection (a)(1).
 
 Id
 
 . at 368,
 
 742 S.E.2d at 355
 
 . The level of materiality required under subsection (a)(1) to support a motion for post-conviction DNA testing has been frequently litigated and has been a high bar for
 
 pro se
 
 litigants.
 
 See, e.g.
 

 State v. Lane
 
 ,
 
 370 N.C. 508
 
 ,
 
 809 S.E.2d 568
 
 (2018) ;
 
 Randall
 
 , --- N.C. App. ----,
 
 817 S.E.2d 219
 
 . In
 
 Lane
 
 , our Supreme Court held that DNA evidence is "material" when
 

 there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The determination of materiality must be made in the context of the entire record, and hinges upon whether the
 evidence would have affected the jury's deliberations. In the context of a capital case, we must consider whether the evidence would have changed the jury's verdict in either the guilt or sentencing phases.
 

 Lane
 
 ,
 
 370 N.C. at 519
 
 ,
 
 809 S.E.2d at 575
 
 (internal quotation marks and citations omitted).
 

 This Court has regularly held that the burden of proof to show materiality is on the movant and a defendant fails to meet that burden when the defendant provides only "conclusory statements" as to the evidence's materiality.
 
 See
 

 State v. Turner
 
 ,
 
 239 N.C. App. 450
 
 , 454,
 
 768 S.E.2d 356
 
 , 359 (2015) ;
 
 State v. Foster
 
 ,
 
 222 N.C. App. 199
 
 , 205,
 
 729 S.E.2d 116
 
 , 120 (2012). Instead, " '[a] defendant must provide
 
 specific reasons
 
 that the requested DNA test would be significantly more accurate and probative of the identity of the perpetrator or accomplice or that there is a reasonable probability of contradicting the previous test results.' "
 

 Cox
 
 ,
 
 245 N.C. App. at 312
 
 ,
 
 781 S.E.2d at 869
 
 (emphasis in original) (quoting
 
 State v. Collins
 
 ,
 
 234 N.C. App. 398
 
 , 411-12,
 
 761 S.E.2d 914
 
 , 922-23 (2014) ).
 

 In this case, while the trial court's order denying Defendant's motion refers to his description of the events as "conclusory claims," Defendant has alleged more than the defendants in the above-cited cases. Defendant has provided specific reasons that the requested DNA test would be significantly more probative of the identity of the perpetrator including: (1) a comprehensive statement of Defendant's version of the events of the night of Ms. Burke's murder, stating that he was on a bus at the time of Ms. Burke's murder, arrived at the scene after she was attacked, and was then attacked by an unknown assailant; (2) Defendant's version of events was consistent with his statements at the scene, his defense at trial, and the testimony of at least one eyewitness; (3) specifically identifying items to be DNA tested; and (4) explaining how DNA testing of the various items of clothing would corroborate his version of the events and why the DNA evidence presented at trial offered an incomplete picture of the events.
 

 Defendant's motion avoids many of the issues this Court's prior cases have highlighted in finding insufficient allegations of materiality. Defendant did not plead guilty and has maintained his innocence.
 
 Cf.
 

 State v. Randall
 
 , --- N.C. App. ----,
 
 817 S.E.2d 219
 
 (2018) (noting that those who plead guilty have more difficulty in alleging materiality). There was additional evidence supporting Defendant's allegation that there was a different perpetrator, including his statements to officers at the scene of the crime and eyewitness testimony regarding his location at the time of the crime.
 
 Cf.
 

 Lane
 
 ,
 
 370 N.C. 508
 
 ,
 
 809 S.E.2d 568
 
 (holding that "the dearth of evidence at trial pointing to a second perpetrator" supported finding the defendant failed to sufficiently allege materiality). Defendant is hoping to show the presence of an alternative perpetrator's DNA, rather than the lack of his own DNA.
 
 Cf.
 

 Collins
 
 ,
 
 234 N.C. App. at 410
 
 ,
 
 761 S.E.2d at 923
 
 (noting that defendants seeking to demonstrate a "lack of biological evidence" are not entitled to post-conviction DNA testing). The items Defendant moved to have tested were identified and preserved soon after Ms. Burke's murder.
 
 Cf.
 

 Randall
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 219
 
 , 222 (2018) (holding that DNA evidence collected over a month after the alleged crime was not material, as it could not be used to prove Defendant was not involved in a sexual relationship with a minor). The results of the DNA testing could corroborate Defendant's defense at trial.
 
 Cf.
 

 State v. McPhaul
 
 , --- N.C. App. ----,
 
 812 S.E.2d 728
 
 (17 April 2018) (unpublished) (holding DNA testing of gunshot residue kits was not material as it could not support Defendant's
 theory of self-defense). The DNA results could directly contradict the State's argument that Defendant was the sole perpetrator of the crime.
 
 Cf.
 

 State v. Little
 
 , --- N.C. App. ----,
 
 796 S.E.2d 404
 
 (21 February 2017) (unpublished) (holding DNA testing of rape kit for DNA of a third-party would not be material because the victim admitted to consensual sex with the third party the day prior to her attack).
 

 Our Supreme Court has held that a defendant fails to establish materiality where the evidence of guilt is so overwhelming that
 there is not "a reasonable probability that the verdict would have been more favorable to the defendant" had the DNA evidence been presented.
 
 Lane
 
 ,
 
 370 N.C. at 518-20
 
 ,
 
 809 S.E.2d at
 
 575-76 ;
 
 State v. Floyd
 
 ,
 
 237 N.C. App. 300
 
 ,
 
 765 S.E.2d 74
 
 (2014) (holding that materiality is a higher burden than relevancy at trial). In evaluating the standard for an ineffective assistance of counsel claim under the Sixth Amendment, the United States Supreme Court applies a similar "reasonable probability" standard. A defendant "must show that there is a reasonable probability that, but for counsel's" deficient representation, there is a "reasonable probability ... the result of the proceeding would have been different."
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 694,
 
 104 S.Ct. 2052
 
 , 2068,
 
 80 L.Ed.2d 674
 
 , 698 (1984). The Supreme Court in
 
 Strickland
 
 further explained the standard by holding:
 

 It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding..... A reasonable probability is a probability sufficient to undermine confidence in the outcome..... When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.
 

 Id.
 

 at 693-95
 
 ,
 
 104 S.Ct. at 2067-69
 
 ,
 
 80 L.Ed.2d at 697-98
 
 .
 

 In the case before us, there is substantial evidence at trial tending to show Defendant's guilt. However, evidence indicating guilt cannot be dispositive of the issue. The weight of the evidence indicating guilt must be weighed against the probative value of the possible DNA evidence. Our Supreme Court has found DNA to be "highly probative of the identity of the victim's killer."
 
 State v. Daughtry
 
 ,
 
 340 N.C. 488
 
 , 512,
 
 459 S.E.2d 747
 
 , 759 (1995).
 

 In enacting N.C.G.S. § 15A-269, our General Assembly created a potential method of relief for wrongly incarcerated individuals. To interpret the materiality standard in such a way as to make that relief unattainable would defeat that legislative purpose.
 
 See
 

 Burgess v. Your House of Raleigh,
 

 326 N.C. 205
 
 , 216,
 
 388 S.E.2d 134
 
 , 140 (1990) ("[A] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage."). A recent dissent in an opinion in this Court highlighted the position in which our previous interpretation of materiality has placed
 
 pro se
 
 defendants, stating "we are requiring indigent defendants to meet this illusory burden of materiality, with no guidance or examples of what actually constitutes materiality. Under our case law, therefore, it would be difficult for even an experienced criminal defense attorney to plead these petitions correctly."
 
 State v. Sayre
 
 , --- N.C. App. ----,
 
 803 S.E.2d 699
 
 (2017) (unpublished) (Murphy, J., dissenting)
 
 aff'd per curiam
 
 --- N.C. ----,
 
 818 S.E.2d 282
 
 (2018). We hold Defendant in the present case has satisfied this difficult burden. Because the trial court erred in finding that Defendant failed to meet his burden of establishing materiality, the trial court's order must be reversed.
 

 III.
 
 Conclusion
 

 The trial court did not err in making its determination prior to receiving an inventory of the available evidence. However, the trial court erred in determining that Defendant failed to sufficiently plead the materiality of the requested postconviction DNA testing. Therefore, the trial court's order must be reversed and remanded for the entry of an order consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges ELMORE concurs.
 

 Judge ARROWOOD dissents with separate opinion.