IN THE SUPREME COURT OF NORTH CAROLINA

No. 69A06-4

Filed 25 September 2020

STATE OF NORTH CAROLINA

v.

TERRAINE SANCHEZ BYERS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 263 N.C. App. 231, 822 S.E.2d 746 (2018), reversing an order entered on 3 August 2017 by Judge W. Robert Bell in Superior Court, Mecklenburg County. Heard in the Supreme Court on 19 November 2019.

*Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Wyatt Orsbon, Assistant Appellate Defender, for defendant-appellee.*

MORGAN, Justice.

This matter mandates our consideration of the requirements which a pro se defendant who seeks postconviction testing of deoxyribonucleic acid (DNA) evidence derived from biological material must fulfill in order to qualify for appointed counsel to assist such a defendant in an effort to obtain this type of scientific evaluation as provided in section 15A-269 of the General Statutes of North Carolina. While this Court has previously addressed the burden that a defendant must satisfy in order to obtain DNA testing after being found guilty of criminal activity, this case presents to

us an issue of first impression with regard to the standard which a defendant must meet for the appointment of an attorney by a trial court under N.C.G.S. § 15A-269 to aid in the defendant's efforts to obtain the postconviction DNA testing. In undertaking the inquiry here, we conclude that defendant Terraine Sanchez Byers has failed to fulfill the requirements which the identified statute has established. Accordingly, this Court reverses the decision rendered below by the Court of Appeals.

## I. The Trial Phase

Defendant was convicted of first-degree murder and first-degree burglary on 3 March 2004. These convictions arose from the 22 November 2001 stabbing death of Shanvell Burke, a person with whom defendant had a romantic relationship before Burke ended it. On that autumnal night in Charlotte, North Carolina, Burke was in her apartment watching television with an individual named Reginald Williams. Williams testified at trial that he and Burke heard a loud crash at the back door of the apartment. When Burke went to see what had caused the sound, Williams heard her yell "Terraine, stop." This development prompted Williams to leave the apartment immediately and to find someone to contact law enforcement for assistance. Williams explained in his testimony that he fled from Burke's residence because she had allowed him to hear a recorded telephone message that defendant had left for Burke in which defendant said that "when he found out who [was dating Burke], he was gonna kill them." Williams also related at trial that Burke had told him that "she was afraid [defendant] was going to do something to hurt her bad."

Evidence presented at trial tended to show that local law enforcement officers were already familiar with Burke's home because after she had terminated her romantic relationship with defendant, Burke had called upon law enforcement for help on multiple occasions due to her fear of defendant. On one such occasion, Burke reported that defendant had struck her in the face and on her head while stating that he was going to kill her, and then defendant brandished a knife toward Burke's aunt, who was also present. Another emergency call by Burke to law enforcement involved her account that defendant had thrown bricks at Burke's apartment window.

In response to the emergency call to law enforcement in light of the circumstances which were occurring on 22 November 2001, the Charlotte-Mecklenburg Police Department arrived at Burke's apartment to discover defendant leaving the apartment through a broken window of the door. Defendant, who was described by officers as nervous and profusely sweating, told the officers that Burke was inside her home and had been injured. Defendant attempted to flee, but officers quickly apprehended and arrested him. Defendant had a deep laceration on his left hand.

Upon entering Burke's apartment, officers discovered her body lying in a pool of blood. Burke was already deceased due to the infliction of eleven stab wounds which she had suffered. A knife handle with a broken blade was recovered by investigating officers. One of the officers who responded to the 22 November 2001 emergency call identified Burke based upon his response to an emergency call at her

residence eleven days earlier. On a prior date, Burke had reported to the officer that defendant had returned to Burke's apartment to harass her immediately after being released from custody on a domestic violence charge. Several days later, the same officer responded to another call at Burke's apartment at which time Burke again reported harassment by defendant, who Burke said she feared was going to physically assault her.

During the investigation of Burke's death, fingernail scrapings from defendant's hands, a bloodstain from a cushion on Burke's couch, a swab from the handle and a swab from the blade of the broken knife found inside Burke's apartment on the night of 22 November 2001, and various other bloodstains throughout the apartment were analyzed by the Charlotte-Mecklenburg Police Department Crime Laboratory. The DNA obtained from these sources matched either defendant, Burke, or both of them. Additionally, one of Burke's neighbors testified that she saw defendant near Burke's apartment about 8:00 p.m. on the night that Burke was killed.

Defendant stipulated during trial that the blood found on the shirt that he was wearing at the time of his arrest was Burke's. Defendant offered no evidence at trial. Upon being found guilty by a jury of the offenses of first-degree murder and first-degree burglary, defendant was sentenced to life imprisonment without parole for the murder conviction and a term of 77–102 months in prison for the burglary conviction, which would be served consecutive to the life imprisonment for murder. Upon

defendant's appeal, the Court of Appeals upheld the judgments entered upon defendant's convictions and denied defendant's post-trial pro se motion for appropriate relief. *See State v. Byers* (*Byers I*), 175 N.C. App. 280, 623 S.E.2d 357, *disc. rev. denied*, 360 N.C. 485, 631 S.E.2d 135 (2006).

## II.  Defendant's Request for Postconviction DNA Testing

On 31 July 2017, defendant filed a pro se motion in the trial court for postconviction DNA testing pursuant to N.C.G.S. § 15A-269 in which he asserted that: (1) defendant was on the other side of town waiting for a bus at the time that the attack on Burke occurred; (2) one of the State's witnesses at trial testified that she saw defendant getting on the 9:00 p.m. city bus on the night that Burke was killed; (3) a private investigator swore in an affidavit that defendant could not have arrived at Burke's apartment prior to the 22 November 2001 emergency call; (4) defendant had gone to Burke's apartment on the night of her death, and when he arrived, defendant noticed that the back door was "smashed in"; (5) defendant went inside Burke's apartment to investigate; and (6) defendant was then attacked by a man in a plaid jacket who escaped from the apartment before police officers arrived. In his motion, defendant stated that his struggle with the man in the plaid jacket would explain the presence of defendant's DNA throughout Burke's apartment and asserted that DNA testing of defendant's and Burke's previously untested clothing could reveal the identity of the actual perpetrator, noting that the State's DNA expert witness had reported, but not testified to, the presence of human blood in various

locations in Burke's apartment that did not match the blood of either defendant or

Burke. Defendant requested that the items of clothing be preserved and that an

inventory of the evidence be prepared. Defendant also asked for the appointment of

counsel to assist defendant in his postconviction DNA-testing process pursuant to

N.C.G.S. § 15A-269(c).

Section 15A-269 of the General Statutes of North Carolina provides, in

pertinent part, the following:

> (a) A defendant may make a motion before the trial court that entered the judgment of conviction against the defendant for performance of DNA testing . . . if the biological evidence meets all of the following conditions:
>
> > (1) Is material to the defendant's defense.
> >
> > (2) Is related to the investigation or prosecution that resulted in the judgment.
> >
> > (3) Meets either of the following conditions:
> >
> > > a. It was not DNA tested previously.
> > >
> > > b. It was tested previously, but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.
>
> (b) The court shall grant the motion for DNA testing . . . upon its determination that:
>
> > (1) The conditions set forth in subdivisions (1), (2), and (3) of subsection (a) of this section have been met;

> (2) If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
>
> (3) The defendant has signed a sworn affidavit of innocence.
>
> . . . .
>
> (c) . . . [T]he court shall appoint counsel for the person who brings a motion under this section if that person is indigent. If the petitioner has filed pro se, the court shall appoint counsel for the petitioner . . . upon a showing that the DNA testing may be material to the petitioner's claim of wrongful conviction.

N.C.G.S. § 15A-269(a), (b), (c) (2019).

On 3 August 2017, the Superior Court, Mecklenburg County, entered an order denying defendant's motion for postconviction DNA testing on the grounds that "the evidence of his guilt is overwhelming" and that defendant has "failed to show how conducting additional DNA testing is material to his defense." Defendant appealed the trial court's order denying his motion to the Court of Appeals.

### III. *The Court of Appeals Decision*

In the Court of Appeals, defendant argued that the trial court erred by denying his motion (1) before "obtaining and reviewing the statutorily required inventory of evidence" sought to be tested and (2) before appointing counsel to assist defendant upon showing in his motion that he was indigent and "the testing may be material to his defense." *State v. Byers (Byers II)*, 263 N.C. App. 231, 234, 822 S.E.2d 746, 748

(2018). The majority of the Court of Appeals panel reversed the trial court's order denying defendant's motion. *Id.* at 243, 822 S.E.2d at 753. Although the lower appellate court saw no error in the trial court's determination of defendant's motion prior to ordering the requested inventory of evidence, the majority concluded that defendant sufficiently pleaded the materiality of his requested postconviction DNA testing so as to be entitled to the appointment of counsel in order to assist him in obtaining the testing. *Id.*

With regard to the issue of materiality, the majority noted that "[t]he level of materiality required under subsection (a)(1) to support a motion for post-conviction DNA testing has been frequently litigated and has been a high bar for *pro se* litigants." *Id.* at 240, 822 S.E.2d at 751 (citing, *inter alia, State v. Lane*, 370 N.C. 508, 809 S.E.2d 568 (2018)). In *Lane*, this Court stated that in order to obtain postconviction DNA *testing*, DNA evidence is considered to be material when

> there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The determination of materiality must be made in the context of the entire record and hinges upon whether the evidence would have affected the jury's deliberations.

*Lane*, 370 N.C. at 519, 809 S.E.2d at 575. In applying our guidance in *Lane* to the instant case, the Court of Appeals majority acknowledged the substantial evidence of defendant's guilt but further opined that "[t]he weight of the evidence indicating guilt must be weighed against the probative value of the possible DNA evidence. Our

Supreme Court has found DNA [evidence] to be 'highly probative of the identity of

the victim's killer.' " *Byers*, 263 N.C. App. at 242, 822 S.E.2d at 753 (quoting *State v.*

*Daughtry*, 340 N.C. 488, 512, 459 S.E.2d 747, 759 (1995)). In the present case, the

lower appellate court's majority then observed the following:

> In enacting N.C.G.S. § 15A-269, our General Assembly created a potential method of relief for wrongly incarcerated individuals. To interpret the materiality standard in such a way as to make that relief unattainable would defeat that legislative purpose. *See Burgess v. Your House of Raleigh*, 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990) ("[A] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage."). A recent dissent in an opinion in [the Court of Appeals] highlighted the position in which our previous interpretation of materiality has placed *pro se* defendants, stating "we are requiring indigent defendants to meet this illusory burden of materiality, with no guidance or examples of what actually constitutes materiality. *Under our case law, therefore, it would be difficult for even an experienced criminal defense attorney to plead these petitions correctly.*" *State v. Sayre*, . . . 803 S.E.2d 699 (2017) (unpublished) (Murphy, J., dissenting)[,] *aff'd per curiam*, [371] N.C. [468], 818 S.E.2d 282 (2018). We hold Defendant in the present case has satisfied this difficult burden.

*Id.* at 242–43, 822 S.E.2d at 753 (first alteration in original) (second emphasis added).

With this reasoning, the Court of Appeals reversed the trial court's order and

remanded for the entry of an order appointing counsel to assist defendant in the

proceeding in which defendant would attempt to establish the level of materiality

required to obtain DNA testing. *Id.* at 243, 822 S.E.2d at 753.

In the view of the dissenting judge on the Court of Appeals panel, defendant did *not* sufficiently establish that he was entitled to the appointment of counsel to assist him in obtaining postconviction DNA testing. *Id.* at 243, 822 S.E.2d at 753 (Arrowood, J., dissenting). The dissenting judge noted that under the pertinent statute, the movant "has the burden of proving by a preponderance of the evidence every fact essential to support the motion for postconviction DNA testing, which includes the facts necessary to establish materiality," *Id.* at 244, 822 S.E.2d at 754 (quoting *Lane*, 370 N.C. at 518, 809 S.E.2d at 574), and then concluded that

> in light of the overwhelming evidence of defendant's guilt and dearth of evidence pointing to a second perpetrator, defendant did not meet his burden to prove by a preponderance of the evidence every fact necessary to establish materiality, and the trial evidence was sufficient to dictate the trial court's ultimate conclusion on materiality, as in *Lane*.

*Id.* at 248, 822 S.E.2d at 756. Accordingly, the dissenting judge would have held that "the trial court did not err by denying defendant's motion for DNA testing because the allegations in his motion were not sufficient to establish that he was entitled to the appointment of counsel." *Id.* at 243, 822 S.E.2d at 753. In light of this position, the dissenting judge deemed it unnecessary to address the issue of the trial court's ruling before having obtained and reviewed the inventory of evidence. *Id.* at 248, 822 S.E.2d at 756.

On 15 January 2019, the State filed a notice of appeal on the basis of the Court of Appeals dissent, along with a motion for a temporary stay and a petition for writ

of supersedeas. We allowed the petition for writ of supersedeas on 16 January 2019. The appeal was heard in the Supreme Court on 19 November 2019.

## *IV. Analysis*

The primary question presented in this appeal dictates that we set forth the threshold level which a pro se defendant must reach through a sufficient allegation of facts so as to establish materiality as required by N.C.G.S. § 15A-269(c) in order *to be appointed counsel* to assist the defendant upon defendant's showing in the pro se motion that the postconviction DNA testing may be material to defendant's claim of wrongful conviction.

The materiality of evidence in a criminal case was addressed by the Supreme Court of the United States in the opinion which it rendered in *Brady v. Maryland*, 373 U.S. 83 (1963). In identifying "where the evidence is material either to guilt or to punishment," the nation's highest tribunal determined that evidence is material if it is "evidence . . . which, if made available [to an accused], would tend to exculpate him or reduce the penalty." *Id.* at 87–88. Citing *Brady*, in *Lane* we expressly (1) recognized "the similarities in the *Brady* materiality standard and the standard contained in N.C.G.S. § 15A-269(b)(2)"; (2) noted that in the context of a defendant's request for postconviction DNA testing, "this Court has explained that 'material' means 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different' "; and (3) reaffirmed that "[t]he determination of materiality must be made 'in the context of the entire record' and

hinges upon whether the evidence would have affected the jury's deliberations." *Lane*, 370 N.C. at 519, 809 S.E.2d at 575 (citations omitted). This Court has construed the term "reasonable probability" to mean "a probability sufficient to undermine confidence in the outcome." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (quoting *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985). We have applied this interpretation of the standard of reasonable probability in cases that invoked the evaluation of the materiality of evidence under *Brady*. *See Lane*, 370 N.C. at 519, 809 S.E.2d at 575; *State v. Tirado*, 358 N.C. 551, 599 S.E.2d 515 (2004); *State v. Kilpatrick*, 343 N.C. 466, 471 S.E.2d 624 (1996). The moving party has the burden of proving by a preponderance of the evidence every fact essential to support the motion for postconviction DNA testing, which includes the facts necessary to establish materiality. *Lane*, 370 N.C. at 518, 809 S.E.2d at 574.

Pursuant to N.C.G.S. § 15A-269(a), one of the three necessary criteria that must be satisfied in a defendant's motion before a trial court for postconviction DNA testing is that the biological evidence is material to the defendant's defense. Another requirement of the statute is that the biological evidence was not "DNA tested" previously, or that it was tested previously "but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results." N.C.G.S. § 15A-269(a)(3). In defendant's pro se motion for postconviction

DNA testing in the present case, defendant averred that his clothing was not subjected to DNA testing and that a couch cushion and the upper handrail of a stairway were subjected to DNA testing "but retesting the items outside of law enforcement agencies will have a reasonable probability of contradicting prior test results." Defendant also averred the following:

> The ability to conduct the requested DNA testing is material to the Defendant's defense on actual innocence and to show another commit [sic] the crime for which he is wrongly convicted. Also, it shows the victim's blood was never on the defendant which would be consistent with him not being the perpetrator. See Defendant's MAR Argument and exhibits. THE DNA IS NEEDED AND NECESSARY TO PROVE THAT THE D.A. FABRICATED THE BLOOD ON THE DEFENDANT'S CLOTHES.

(Emphasis in original.) Pursuant to N.C.G.S. § 15A-269(b), the trial court shall grant the motion for postconviction DNA testing upon its determination (1) that all of the conditions of N.C.G.S. § 15A-269(a) have been met[1]; (2) that if the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and (3) that the defendant has signed a sworn affidavit of innocence.

In applying the pertinent statutory law and case law to the present case, we conclude that defendant has failed to prove by a preponderance of the evidence every

---

[1] The existence of the only unmentioned condition of N.C.G.S. § 15A-269(a)—that the biological evidence is related to the investigation or prosecution that resulted in the judgment—is not in dispute.

fact essential to support his motion for postconviction DNA testing, has failed to establish that the biological evidence is material to his defense, has failed to meet the condition that the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results regarding previous DNA testing of some items, and has failed to demonstrate that there exists a reasonable probability that the verdict would have been more favorable to him if the DNA testing being requested had been conducted on the evidence.

As this Court said in *Lane*, a defendant has the burden as the moving party under N.C.G.S. § 15A-269(a) to prove by a preponderance of the evidence every fact essential to support the motion for postconviction DNA testing, including the facts necessary to establish materiality. In the current case, defendant has fallen short of these requirements. Instead of offering proof of facts which he contends satisfactorily show that he has satisfied the standard for postconviction DNA testing, defendant merely offers conclusory and vague statements without evidentiary foundation, which culminate in an unsupported accusation that the State falsified evidence in order to convict him. This circumstance serves to further reveal the lack of evidence which defendant has identified as being material to his defense in order to comport with N.C.G.S. § 15A-269(a) and the cited case law.

The specific issue which this Court is charged to resolve regarding defendant's qualification for the appointment of counsel in the instant case to assist his efforts,

upon defendant's pro se motion filed in the trial court, to obtain postconviction DNA testing, is governed by subsection (c) of N.C.G.S. § 15A-269 and is also premised upon defendant's ability to demonstrate the materiality of the DNA testing, as the language of N.C.G.S. § 15A-269(c) establishes that there must be "a showing that the DNA testing may be material to the petitioner's claim of wrongful conviction." In defendant's capacity as the petitioning party who makes the pro se motion before the trial court under N.C.G.S. § 15A-269(a) for the performance of postconviction DNA testing upon a requirement to meet one of several mandated conditions that the testing *is* material to the defendant's defense, he has the burden to show under N.C.G.S. § 15A-269(c) that the DNA testing *may* be material to defendant's claim of wrongful conviction in order for the trial court to grant defendant's request for the appointment of counsel to assist defendant in the postconviction DNA testing process.

In this case of first impression, we discern that the Legislature's use of the phrase "*is* material to the defendant's defense" in N.C.G.S. § 15A-269(a) and its employment of the terminology in § 15A-269(c) "*may* be material to the petitioner's claim of wrongful conviction"—each with regard to the depiction of the postconviction DNA testing at issue—would appear to relax the standard to be met by a defendant in order to qualify for the appointment of counsel to assist in the attainment of postconviction DNA testing under subsection (c), as compared to an apparent heightened standard for a defendant to meet in order to achieve postconviction DNA testing under subsection (a). To this end, we recognize the soundness of the approach

of the Court of Appeals majority in this case as shown in its observation: "In enacting N.C.G.S. § 15A-269, our General Assembly created a potential method of relief for wrongly incarcerated individuals. To interpret the materiality standard in such a way as to make that relief unattainable would defeat that legislative purpose." *Byers*, 263 N.C. App. at 242, 822 S.E.2d at 753. However, the majority of the court below went on to deem this well-founded beginning point of analysis regarding legislative intent to compel it to determine, in light of its description of a defendant's statutory requirement of proof under N.C.G.S. § 15A-269 as "this illusory burden of materiality," to "hold Defendant in the present case has satisfied this difficult burden." *Id.* at 243, 822 S.E. 2d at 753. Contrary to the manner in which the Court of Appeals majority has chosen to couch the statutory burden established in N.C.G.S. § 15A-269 which a defendant must satisfy in order to show the materiality of postconviction DNA testing, we do not subscribe to such a conclusion that disharmony exists in this matter between the legislative intent undergirding N.C.G.S. § 15A-269 and this Court's consistent interpretation of the term "material" for application in N.C.G.S. § § 15A-269(a) and (c).

It is important to note, in light of the higher standard that a defendant must satisfy to show that postconviction DNA testing "*is* material to the defendant's defense" under N.C.G.S. § 15A-269(a) in order to obtain *testing* as compared to the lower standard that a defendant must satisfy to show that postconviction DNA testing "*may* be material to the petitioner's claim of wrongful conviction" under

N.C.G.S. § 15A-269(c) in order to obtain *court-appointed counsel*, that the term "material" maintains the same definition in subsections (a) and (c) that this Court has attributed to it in our cited case decisions. The major consequentiality inherent in the term "material" itself is neither heightened in N.C.G.S. § 15A-269(a) nor relaxed in N.C.G.S. § 15A-269(c) by virtue of an alteration in the term's legal meaning; rather, it is the modifying word "is" preceding the term "material" in subsection (a) and the modifying word "may" prior to the term "material" in subsection (c) which create the difference in the levels of proof to be met by a defendant.

In utilizing this Court's construction of the term "material" in our *Lane*, *Tirado*, and *Kilpatrick* decisions—all of which addressed the evaluation of materiality of evidence under the rubric of the approach to the subject by the Supreme Court of the United States as enunciated in *Brady*—we conclude that defendant has not made the prescribed "showing that the DNA testing may be material to the petitioner's claim of wrongful conviction" as required for the appointment of counsel by the trial court under N.C.G.S. § 15A-269(c). Here, in his effort to obtain the appointment of counsel by the trial court, defendant has not sufficiently shown that the postconviction DNA testing may tend to exculpate him because there is not a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding may have been different, in the context of the entire record and hinging upon whether the evidence may have affected the jury's deliberations, as to

petitioner's claim of wrongful conviction. We therefore agree with the analysis employed by the dissenting view in the Court of Appeals in the current case which led to its conclusion that "no reasonable probability exists under the facts of this case that a jury would fail to convict defendant and . . . the trial court did not err by concluding defendant failed to establish materiality." *Byers*, 263 N.C. App. at 248, 822 S.E.2d at 756. This scrutiny was rooted in the dissent's observations, which we find persuasive, that

> . . . in light of the overwhelming evidence of defendant's guilt and dearth of evidence pointing to a second perpetrator, defendant did not meet his burden to prove by a preponderance of the evidence every fact necessary to establish materiality, and the trial evidence was sufficient to dictate the trial court's ultimate conclusion on materiality, as in *Lane*.

*Id.*

Indeed, while this Court has defined the term "material" found in N.C.G.S. § 15A-269(a) to mean that there is a reasonable probability that had the evidence been disclosed to the defense the result of the proceeding would have been different, and is a definition which we find to be appropriate to adopt for the term "material" in N.C.G.S. § 15A-269(c) in order to promote applicability and consistency within the statute, it is the weighty volume of evidence offered against defendant at trial that exacerbates the lack of evidence offered by defendant both at his trial and after his trial which reinforces the inadequacy of defendant's effort to show that postconviction DNA testing is material to his defense; that there is a reasonable probability that had

the evidence been disclosed to the defense the result of defendant's trial would have been different; and that DNA testing may be material to the petitioner's claim of wrongful conviction so as to qualify defendant here for the appointment of counsel. At trial, the State introduced evidence which tended to show, *inter alia*, that (1) on the night that Burke died after suffering multiple stab wounds, Williams heard Burke yell "Terraine, stop" after Williams and Burke heard a loud crash at the back door of her apartment as they watched television at the residence, after which Burke went to the area of the noise to determine the cause of it; (2) defendant Terraine Byers and Burke had been involved with each other in a romantic relationship which Burke had ended; (3) Burke had allowed Williams to hear a recorded telephone message that defendant had left for Burke in which defendant threatened to kill the man defendant believed was currently dating Burke; (4) Burke had told Williams that she was afraid that defendant "was going to do something to hurt her bad"; (5) one of Burke's neighbors had seen defendant near Burke's apartment on the night that Burke was killed; (6) upon arriving at Burke's apartment after receiving the emergency call, officers saw defendant, who was nervous and profusely sweating, leaving the apartment through a broken window of the back door; (7) defendant told the officers that Burke was inside the apartment and was injured; (8) defendant attempted to flee, but he was arrested; (9) defendant had a deep laceration on his left hand; (10) upon entering the apartment, officers found Burke lying in a pool of blood; (11) after terminating her romantic relationship with defendant, Burke had called

upon law enforcement for help on multiple occasions due to her fear of defendant; (12) an occasion transpired on which defendant struck Burke in the face and on the head while stating that he would kill her and then brandished a knife toward Burke's aunt; (13) there were several incidents of domestic violence involving defendant and his interaction with Burke; (14) a mixture of DNA from Burke and defendant was determined to exist from defendant's fingernail scrapings; (15) DNA which matched defendant was determined to exist in a bloodstain on an upper handrail of a stairway and in a bloodstain on a couch cushion in Burke's apartment; and (16) DNA which matched Burke was determined to exist in bloodstains obtained from a knife and its blade which had been located inside Burke's apartment. Additionally, defendant stipulated that the blood which covered the shirt that he was wearing at the time of his arrest was Burke's blood. Juxtaposed against the wealth and strength of the evidence introduced by the State was the dearth of evidence from defendant, who did not present any evidence at trial.

The total absence of any production of evidentiary proof by defendant at his trial or in his subsequent motion for postconviction DNA testing under N.C.G.S. § 15A-269 readily leads to the conclusion that defendant has not satisfied his burden of proving by a preponderance of the evidence every fact essential to support his motion for postconviction DNA testing, which includes the facts necessary to establish that the biological evidence is material to his defense as required by subsection (a) of the statute. This deficiency likewise prompts the resulting

determination that there is not a reasonable probability that postconviction DNA testing of the biological evidence that was not tested previously, or the biological evidence that was tested previously, will provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results, as also contemplated by N.C.G.S. § 15A-269(a). Similarly, as mentioned in N.C.G.S. § 15A-269(b), there does not exist a reasonable probability that the verdict would have been more favorable to defendant if the DNA testing being requested had been conducted on the evidence or, as addressed by us in cases such as *Lane*, *Tirado*, and *Kilpatrick*, had the evidence been disclosed to the defense. These inadequacies are inextricably intertwined with the parallel insufficient showing by defendant, even under the less stringent standard embodied in N.C.G.S. § 15A-269(c), that the postconviction DNA testing may be material to defendant's claim of wrongful conviction with regard to his ability to obtain the appointment of counsel by the trial court to assist defendant with his pro se request to achieve postconviction DNA testing.

As stated by the Supreme Court of the United States in *Brady* and as applied by this Court to the instant case, while evidence is material when, if made available to an accused, it would tend to exculpate the defendant or to reduce the penalty, defendant here is not in such a position. In considering whether the evidence for which defendant fails to demonstrate materiality would have affected the jury's deliberations and in assessing the context of the entire record pursuant to the

direction provided by the Supreme Court of the United States in *Bagley* and which we embraced in *Allen*, we do not discern that there is a probability sufficient to undermine confidence in the outcome upon our determination that the trial court did not err in finding that the evidence of defendant's guilt "is overwhelming" and in concluding that defendant has "failed to show how conducting additional DNA testing is material to his defense." Similarly, defendant has failed to show in his pro se motion for postconviction DNA testing that such testing may be material to his claim of wrongful conviction in order to qualify for the appointment of counsel by the court.

In *Lane*, we concluded, despite the defendant's contentions that the requested postconviction DNA testing was material to his defense, that the overwhelming evidence of defendant's guilt presented at trial and the dearth of evidence at trial pointing to a second perpetrator, along with the unlikely prospect that DNA testing of the biological evidence at issue would establish that a third party was involved in the crimes charged, together created an insurmountable hurdle to the success of the defendant's materiality argument. 370 N.C. at 520, 809 S.E.2d at 576. We adopt this analysis, as we find it to be directly applicable to the facts and circumstances of the present case in determining defendant's failure to satisfy the reduced burden of proof to qualify for the appointment of counsel to assist defendant's efforts to obtain postconviction DNA testing upon a showing that the DNA testing may be material to defendant's claim of wrongful conviction. Defendant here fails to meet the required condition of N.C.G.S. § 15A-269(a) in his petition that postconviction DNA testing of

the biological evidence is material to his defense, and he also fails to satisfy his lesser burden to show under N.C.G.S. § 15A-269(c) that DNA testing may be material to his claim of wrongful conviction. Therefore, pursuant to the operation of the statute, defendant does not satisfy the necessary conditions to obtain the appointment of counsel under N.C.G.S. § 15A-269(c).

## V. Conclusion

Based upon the foregoing reasons, we reverse the decision of the Court of Appeals and reinstate the order of the trial court.

REVERSED.

Justice ERVIN did not participate in the consideration or decision of this case.